SUPREME COURT—APP. DIVISION—THIRD DEPARTMENT,

Sept., 1915.

## THE PEOPLE ex rel. JOSEPH G. ROBIN v. PATRICK HAYES, WARDEN.

PARDON—ISSUED SUBSEQUENT TO IMPEACHMENT OF GOVERNOR INEFFEC-
TIVE.

William Sulzer, being impeached as Governor, granted a pardon
to Joseph Robin for the crime of Grand Larceny. *Held* that a
person elected Governor is not a *de facto* governor after articles
of impeachment have been preferred against him as they transfer
the powers and duties of the office to the Lieutenant Governor, and
the attempted pardon did not give relator any rights.

APPEAL by the relator, Joseph G. Robin, from an order of the
Supreme Court made at the Ulster Special Term and entered in
the office of the clerk of the said county on the 13th day of
September, 1913, quashing a writ of habeas corpus, and also
from an order entered in said clerk's office on the 7th day of
February, 1914, denying the relator's application upon a re-
newal, rehearing and reargument.

*Robert D. Ireland* (*Benjamin F. Tracy* and *Anthony J.
Ernest*, of counsel), for the appellant.

*Frank L. Polk, Corporation Counsel* (*Terence Farley*, of
counsel), for the respondent.

WOODWARD, J.:

On the 30th day of August, 1913, William Sulzer, claiming
to act in the capacity of Governor of the State of New York,
made and executed an instrument in writing in which, after
the recital of the conviction and sentence of Joseph G. Rob-

for the crime of grand larceny, he declares: "Therefore, know ye, that we have pardoned, remised and released, and by these presents do pardon, remise and release the said convict, of and from the offense whereof in our said court he stands convicted as aforesaid, and of and from all sentences, judgments and executions thereon. In testimony whereof, we have caused these our letters to be made patent and the seal of our State to be hereunto affixed." This instrument is signed by William Sulzer, attested by Chester G. Platt, "Secretary to the Governor," and bears the executive privy seal. A copy of this alleged pardon was presented to the defendant on the 2d day of September, 1913, and was refused recognition, as he alleges in his amended return, "for the reason that said William Sulzer, as I am advised and believe, had no power or authority to make, sign or issue said alleged pardon or to do any act or thing requisite to entitle the said Joseph G. Robin to discharge from my custody in said New York County Penitentiary, the said William Sulzer having been heretofore and on the 12th day of August, 1913, and before the said William Sulzer assumed to make, sign and issue said alleged pardon, impeached by the Assembly of the State of New York," etc.

On the 19th day of August, 1913, before the date of this alleged pardon, the relator had verified a petition for a writ of habeas corpus, and after due proceedings this writ was, on the 13th day of September, 1913, quashed, and an order to that effect was duly entered upon the same day, and an appeal was taken from that order on the same date, but was never prosecuted. The relator's imprisonment expired on the 10th day of January, 1914, and on the 28th day of that month the relator made an application "for a renewal, rehearing and reargument of the proceeding upon the return of the writ of habeas corpus heretofore heard and determined * * * upon the ground that the relator has since said argument discovered additional facts and evidence which should be con-

sidered by the court and which would tend to change the decision, etc.    This application was denied and the relator appeals from both orders.

We are asked to dismiss this appeal on the ground that the relator, now being at large, the question involved is academic— that no rights of his are involved.    We are unwilling to make this disposition of the case.    If the relator was in fact pardoned he is fairly entitled to the benefits of that act of grace in his way back to his place in society, and while habeas corpus may not be the most satisfactory method of raising the question at this time, it seems wise, in view of all the circumstances, to finally dispose of the question underlying the claim of the relator.

The appellant recognizes that the judgment of the Court for the Trial of Impeachments, entered on the 17th day of October, 1913, removing William Sulzer from the office of Governor of the State, has finally disposed of all of the questions relating to the validity of the original impeachment made on the 12th day of August, 1913, and exhibited to the Senate on the following day (2 Court for Trial of Impeachments, 1767, 1777).    And this court is committed to the same doctrine in People ex rel. Sulzer v. Sohmer (162 App. Div., 921). It is suggested, however, that a pardon issued by a governor *de facto* is valid, the case of *ex parte* Norris (8 Richardson, South Carolina) being relied upon to support this contention, and it is contended that William Sulzer, holding physical possession of the office and assuming to act in granting the pardon in question, was such *de facto* governor, and that the failure of the respondent to recognize such action and to give the relator his liberty involved a substantial right of the latter which demands redress at the hands of this court.    We shall not, at this time, question the ruling of the distinguished court of South Carolina that a " pardon issued by a governor *de facto* is valid," nor shall we quarrel with the authority cited

nor with the conclusion that the " rule does not depend on the extent of the powers existing in the Crown, but on the character of those powers," that the rule is based on the " ground that there should always be one capable of administering the laws at the head of the government." Indeed, we should be disposed to agree with the position taken by the learned court of South Carolina if William Sulzer was a *de facto* governor at the time of making and issuing the pardon to the relator. The difficulty is that he was not a *de facto* governor; there was " one capable of administering the laws at the head of the government " by reason of a constitutional provision made to meet just such a situation as arose in the summer of 1913 in this State. By section 1 of article 4 of the State Constitution it is provided that the " executive power shall be vested in a governor, who shall hold his office for two years; a lieutenant-governor shall be chosen ,at the same time, and for the same term." Sections 2 and 7 of the same article provide that the qualifications of the governor and lieutenant-governor shall be the same, and section 5 provides that the " governor shall have the power to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment," etc. Section 6 of the same article then provides that in " case of the impeachment of the governor, or his removal from office, * * * the powers and duties of the office shall devolve upon the lieutenant-governor for the residue of the term, or until the disability shall cease." It will thus be seen that there is no moment of time when William Sulzer, the duly elected Governor of the State of New York, could have been a *de facto* governor. He held the office *de jure*, or of right, from the first day of January, 1913, to the 12th day of August of the same year. Upon that day the Assembly preferred articles of impeachment against William Sulzer as governor, and upon that day, under the constitution of this State, the " powers and duties of the office " devolved upon the lieu-

tenant-governor, and when the Court for the Trial of Impeachments found William Sulzer guilty of some of the matters charged and removed him from the office of governor on the 17th day of October, 1913, those powers and duties were continued in the lieutenant-governor " for the residue of the term." The impeachment did not deprive William Sulzer of the office of governor; it merely devolved the " powers and duties of the office " upon the lieutenant-governor pending the trial of the charges; it suspended the powers and duties of the office in William Sulzer and transferred them temporarily to Martin H. Glynn, possessing all of the qualifications required by the constitution for the discharge of those powers and duties, and these became of a permanent character·after the judgment removing William Sulzer from office. A *de facto* governor is an actual, in fact, in reality, a governor, as a " king *de facto,* distinguished from a king *de jure,* or by right " (Webster). And where the constitution itself provides that the " powers and duties " of the governor *de jure* shall devolve upon another under given circumstances, it is furtile to contend that the acts of such governor are those of a *de facto* officer after the devolution has taken place. To devolve is to " transfer from one person to another; to deliver over; to hand down " (Webster), and this transfer of the powers and duties of the office of governor, where the latter is under impeachment, is by operation of law; it is the condition under which William Sulzer accepted the office at the hands of the people of the State, and from the moment articles of impeachment were adopted he was shorn of all the powers and duties of the office of governor, and those powers became vested in the lieutenant-governor. There was no interregnum; at the moment the powers and duties passed out of William Sulzer they passed into the control of Martin H. Glynn, and the former had no more authority to grant a pardon than he had to perform any other function of the office. William Sulzer was governor *de*

*jure,* or of right, until he was removed from office, but from the moment of the adoption of the articles of impeachment he became *functus officio;* he had discharged all of the duties permitted by the constitution, and his powers were at an end, until the Court for the Trial of Impeachments had passed upon the charges. The attempted pardon was issued subsequent to the impeachment, and could not, therefor, give the relator any rights.

The orders appealed from should be affirmed.

All concur, except Smith, P. J., who reads for dismissal of appeal.

SMITH, P. J. (concurring)—I concur in the opinion of Mr. Justice Woodward in so far as he holds that Governor Sulzer was not a *de facto* governor at the time of the attempted granting of the pardon to relator. I do not understand that it is claimed that he was then a *de jure* governor. Upon his impeachment his powers and duties devolved upon the lieutenant-governor under section 6 of Article IV of the Constitution. By section 13 of Article VI of the Constitution the word impeachment seems to be defined as the act of the Assembly in presenting by a majority vote articles of impeachment to be tried by the court of impeachment to be thereafter formed. I also am of opinion that inasmuch as the term of relator's imprisonment has expired, and as the object of this writ is to relieve relator from unlawful imprisonment, the matter has now become academic and the relator's rights should be determined in some other proceeding when the determination can be effective to secure to him such rights as he may lawfully have under the paper claimed by him to be a pardon. I therefore vote to dismiss the appeal.